# Exhibit A

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>WILLIAM SINGER,<br>    Defendant,<br><br>and<br><br>JOHN B. WILSON,<br>    Movant. | No. 1:19-cr-10078-DJC |

**JOHN WILSON'S REPLY IN SUPPORT OF SUPPLEMENTAL BRIEF
<u>ON APPLICABILITY OF FED. R. CIV. P. 60(b)(6)</u>**

Movant John Wilson stands on his prior submissions as to most of what the government says in its March 20, 2024, response.  The government's conduct—omitting all mention of and contact with Mr. Wilson from the Singer Forfeiture; drafting vague pleadings; and purporting to indict the Wilson Funds as "proceeds" of a crime that ended well before Mr. Wilson transferred them—makes a mockery of due process.  For the same reasons, the Court should alternatively find that Mr. Wilson is not at fault for not challenging the Singer Forfeiture earlier and, therefore, that his motion is not governed by Rule 60(b)(1).  Mr. Wilson has nothing further to say on this issue.

This reply instead focuses on the government's surprising decision to double down on its argument that the Court should deny Mr. Wilson relief based on the government's own warped view of Mr. Wilson's culpability.  In essence, the government says it really, *really* thinks Mr. Wilson engaged in fraud and bribery, and, therefore, (1) a trial is unnecessary to show Mr. Wilson's guilt, and (2) its belief alone is a sufficient reason to let the government keep the Wilson Funds.  The Court should not indulge this view.

The government asserts that it has located no forfeiture case finding a constructive or resulting trust for the benefit of a third-party petitioner in which the petitioner was "criminally charged in a related case."  DE 136, at 9.  The government's decision, however, to accuse Mr. Wilson of fraud and bribery amounts to nothing.  *See* First Circuit Pattern Jury Instruction 1.02 ("The indictment . . . is not evidence of anything.").  In the only relevant case the government cites, the petitioner was denied a constructive trust under the doctrine of unclean hands not because the government *thought* he was guilty, but because the petitioner pleaded guilty, and it was "clear that [he] ha[d] used this residence in the past for his drug activities."  *United States v. Neidig*, No. 4:CR-04-0271, 2008 WL 2697189, at *4 (M.D. Pa. July 3, 2008).  *Neidig* does not say that the Court can deny Mr. Wilson relief just because the government decided to indict him.

Mr. Wilson's trial was so badly tainted by the government's introduction of irrelevant and

1

unfairly prejudicial evidence, and the exclusion of exculpatory evidence, that the First Circuit refused to affirm the convictions on the purported strength of the properly admitted evidence. *See United States v. Abdelaziz*, 68 F.4th 1, 42-60 (1st Cir. 2023).  Nevertheless, the government cherry-picks quotes from the First Circuit's opinion to suggest that Mr. Wilson *could* be guilty, DE 136, at 9-10, even though the government failed to obtain a valid conviction.  Of course, the First Circuit did not itself make factual findings, but, consistent with the standard of review, "review[ed] the evidence in the light most favorable to the verdict." *Abdelaziz*, 68 F.4th at 42. The government's appeal to out-of-context remarks—in an opinion that unequivocally rejected the legal and factual theories underpinning the entire Varsity Blues case—is unpersuasive.

      Lastly, the government cites Mr. Wilson's tax conviction as evidence that he is also guilty of fraud and bribery.  DE 136, at 9.  To be clear, the tax count had nothing to do with the Wilson Funds, but instead concerned $220,000 that Mr. Wilson had donated four years earlier to USC and an IRS-approved charitable foundation in connection with his son's college application.  The court's conclusion that Mr. Wilson incorrectly deducted certain portions of this donation as a business expense and as a charitable contribution does not mean that Mr. Wilson committed fraud or bribery in connection with his son's college admission, let alone his daughters', which occurred four years after the USC donation.  Were it otherwise, the First Circuit's decision to vacate the fraud and bribery counts, but not the tax count, would make no sense.  In particular, the court's reference, cited by the government, to the $220,000 being part of a "quid pro quo" does not make the underlying transaction fraudulent or a bribe.  Under the tax law, a "quid pro quo" just means a donation to a charity that provided some benefit in response to the donation, which is perfectly legal if properly offset.  *See, e.g.*, 26 U.S.C. § 6115.  Indeed, much of the First Circuit's analysis on this issue consists of explaining how a jury could find Mr. Wilson guilty on the tax count independently of the vacated fraud and bribery counts.  *See Abdelaziz*, 68 F.4th at 64-74.  The

2

court should reject the government's attempt to parlay the irrelevant tax count into a finding that Mr. Wilson was guilty of all charged conduct.

The government claims Mr. Wilson committed the same crimes that most other parents pleaded guilty to. But the government failed to prove this. And when offered a second chance to prove Mr. Wilson's guilt at a fair, untainted trial, it quickly ditched its indictment. Since then, it has, like the proverbial fisherman, bragged about the size of the one that got away. Considering this case's procedural posture and the undisputed facts that show Mr. Wilson's interest in the Wilson Funds, DE 119, at 16-20; DE 134, at 6-8, the Court should grant Mr. Wilson the return of his $1 million without further delay. The government seized these funds over five years ago. Mr. Wilson has already lost a six-figure sum in interest as a result—this, on the heels of the significant anguish inflicted on Mr. Wilson and his family by the government's misbegotten prosecution. It is time for this case to come to an end. The Court should order the government to return the Wilson Funds to Mr. Wilson forthwith.

DATED: March 27, 2024                                Respectfully submitted,

/s/ Michael Kendall
Michael Kendall (BBO# 544866)
Lauren Papenhausen (BBO# 655527)
Dan Medici (BBO# 705650)
WHITE & CASE LLP
75 State Street
Boston, MA 02109-1814
Telephone: (617) 979-9310
michael.kendall@whitecase.com
lauren.papenhausen@whitecase.com
dan.medici@whitecase.com

*Counsel for John Wilson*

## **CERTIFICATE OF SERVICE**

      I hereby certify that the above document is being filed on March 27, 2024, through the ECF system, which will send true copies to all counsel of record.

                                            /s/ Michael Kendall
                                            Michael Kendall