UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES,

v.

WILLIAM RICK SINGER,

1:19-cr-10078-DJC

**RESPONSE TO THE PROBATION OFFICE'S REQUEST FOR A HEARING**

William Rick Singer[1] served his time for highly publicized criminal conduct to which he pled guilty, expressed remorse, and will never repeat.  Mr. Singer is now reintegrating himself into the community on supervised release, the terms of which Judge Zobel decided at Mr. Singer's sentencing hearing on January 4, 2023 after careful consideration of the parties' thoughtful sentencing submissions.  Mr. Singer has complied fully with the supervised release conditions that Judge Zobel determined were just and appropriate.  The Probation Office does not contend otherwise.

The Probation Office nevertheless requested a hearing ostensibly to raise its concern that Mr. Singer's present employment involves college admissions counseling.  The Probation Office's concern, however, does not warrant any change in Mr. Singer's supervised release

---

[1] As both government counsel and Mr. Singer are aware, undersigned counsel served as lead counsel to one of the parents originally charged in the U.S. v. Sidoo et al. indictment in March 2019.  That parent pled guilty and was sentenced by Judge Gorton. Undersigned counsel's representation of that parent occurred while undersigned counsel was a partner at Ropes & Gray.  Undersigned counsel has advised government counsel that he considered whether representing Mr. Singer would create any conflict under (or might violate) Rules of Professional Conduct 1.6, 1.7, or 1.9 and determined that it would not.  Undersigned counsel is confident of this conclusion.

1

conditions. Mr. Singer's present employment is both lawful and entirely consistent with the conditions of his supervised release. Most important, Mr. Singer knows that he must turn square corners—and he is doing so. The government's "Varsity Blues" takedown, which put Mr. Singer's face on the front page of essentially every newspaper in the country, had exactly the deterrent effect the government desired. Neither Mr. Singer nor any rational parent, student, test proctor, or university employee will ever seek to cheat the system again. Thus, if the Probation Office's concern is that Mr. Singer might be tempted to reoffend, that concern is unfounded. And it certainly would not justify imposing new, more restrictive supervised release conditions on Mr. Singer now, more than two years after Judge Zobel's entry of final judgment.

## FACTUAL BACKGROUND

Judge Zobel sentenced Mr. Singer on January 4, 2023. Judge Zobel sentenced Mr. Singer to 42-months' imprisonment, to be followed by three years of supervised released. In addition to the mandatory and standard conditions of supervised release, Judge Zobel determined that Mr. Singer's supervised release should be subject to three additional conditions: (1) paying his restitution obligation in accordance with the court-ordered schedule, (2) not incurring new credit charges or opening new credit lines without the Probation Office's approval, and (3) providing the Probation Office with access to any requested financial information. The prosecution did not ask Judge Zobel to impose any field-of-employment restriction on Mr. Singer. To the contrary, the prosecution's sentencing memorandum acknowledged that Mr. Singer would be entitled to resume his work "as a college admissions coach" immediately after his release from prison. *See* ECF No. 91, at 10. In its sentencing memorandum, the prosecution argued that this justified a harsher prison sentence. *Id.* Judge Zobel apparently took this argument to heart, as Mr. Singer's 42-month prison sentence was by far the harshest doled out to any of the Varsity Blues defendants.

Because he received good behavior and First Step Act sentencing credits, Mr. Singer was released from Bureau of Prisons custody on March 25, 2025. Mr. Singer is back living in his home state of California, working for an admissions consulting company owned by his sister. Mr. Singer's current employment involves advising students, parents, affinity groups, organizations, and institutions regarding college admissions and campus-related issues, including assessing which campuses provide the best environments for Jewish students and helping smaller schools attract and support "NIL Collectives."[2] Mr. Singer is working closely with experienced compliance attorneys to ensure that his business practices conform to best practices. Mr. Singer's work is largely performed remotely from his home in California, but he also intends to engage in domestic and international travel for business purposes such as visiting campuses, meeting with individual and institutional clients, and attending conferences and symposia.

## ARGUMENT

Federal Rule of Criminal Procedure 32.1(c) provides that a district court may modify the terms of a person's supervised release in accordance with 18 U.S.C. § 3583. Section 3583(e)(2), in turn, provides that a district court "may modify" the conditions of supervised release "at any time prior to the expiration or termination of the term of supervised release," including "enlarg[ing] the conditions" of the defendant's supervised release.

Neither Rule 32.1(c) nor § 3583(e)(2), however, makes clear whether a district court's authority to enlarge a defendant's supervised release conditions is limited to circumstances where the district court also would have the power to *revoke* the defendant's supervised release entirely—that is, where the defendant is found to have *violated* the original conditions of his

---

[2] An NIL Collective is a group of donors that provides financial support to a school's athletic program, which the athletic program can then use to attract student-athletes consistent with the NCAA's "name, image, and likeness" rules. A school's ability to attract and support an NIL Collective has become essential to the school's ability to field competitive teams.

3

supervised release. We think the better reading of Rule 32.1(c) and § 3583 is that the district court's authority is so limited.

Section 3853(e)(2) provides that any enlargement of the terms of supervised release must comply with "the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision." That clearly is a reference to Rule 32.1. Rule 32.1(a) sets forth the procedural requirements for the initial appearance of a person "in custody for violating probation or supervised release . . . ." Rule 32.1(b) then addresses to the court's power to revoke the person's probation or supervised release upon a finding that a violation was committed. Rule 32.1(c) then addresses a court's authority to "modify" the terms of probation or supervised release after "a hearing[ ] at which the person has the right to counsel and an opportunity to make a statement and present any information in mitigation."

Read as a unitary whole, it seems clear that Rule 32.1 is all about empowering a district court to respond appropriately to a defendant's violation of his probation or supervised release conditions, not imbuing a district court with unconditional authority to engage in a do-over of its (or another judge's) original sentencing decision. We therefore respectfully submit that the better reading of Rule 32.1 is that, before a district court can add new, more restrictive supervised release conditions after final judgment, the district court first must find that the person violated the original terms of his supervised release. Not only does that reading harmonize the various subsections of Rule 32.1, but it also is consistent with the broader social interest in the finality of judgments, which should not be made more severe after the fact unless the defendant is found to have engaged in conduct he knew would expose him to additional punishment.[3] Indeed, we

---

[3] If Judge Zobel had decided to impose a field-of-employment restriction as a supervised release condition in the first instance, she might also have decided to impose a shorter term of imprisonment.

4

are not aware of a single case in which a district court, years after final judgment, tacked on new, more restrictive conditions to the defendant's supervised release in the absence of a finding that the defendant violated the terms of his original release.

Here, of course, the Probation Office is not contending that Mr. Singer violated any of his supervised release terms. In fact, we believe it is undisputed that Mr. Singer's conduct on supervised release has been exemplary, as it was when he was in BOP custody. That should be the end of the matter.

But even if the Court disagrees with our reading of Rule 32.1 and concludes that it has the authority to add new, more restrictive supervised release conditions so long as it provides Mr. Singer an opportunity to be heard, the Court still should decline to impose a field-of-employment restriction on Mr. Singer. The purely theoretical risk of recidivism (which is present in *every* criminal case) is sufficiently addressed by the standard condition of supervised release that prohibits Mr. Singer from engaging in any violations of state or federal law. The purely theoretical risk of recidivism does not warrant a prophylactic field-of-employment restriction here. College admissions counseling does not involve health or welfare concerns, nor does it entail a risk that a client will become the unwitting financial victim of an unscrupulous thief (unlike, for example, the field of financial advising). The circumstances here are, therefore, completely dissimilar to circumstances in which a field-of-employment restriction might be warranted under the 18 U.S.C. § 3553(a) sentencing factors.

## **CONCLUSION**

Mr. Singer thanks the Court for its time and consideration, and he looks forward to addressing any questions the Court may have regarding his present employment. For the reasons stated above, the Court should not impose any new conditions of supervised release that would restrict Mr. Singer's ability to continue with his present employment.

                Respectfully submitted,

                <u>*/s/ Aaron M. Katz*</u>
                Aaron M. Katz
                AARON KATZ LAW LLC
                399 Boylston Street, 6th Floor
                Boston, MA 02116 (617) 915-6305
                akatz@aaronkatzlaw.com

                *Counsel for William Rick Singer*

DATED: June 3, 2025

## **CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing memorandum was served on the government counsel via the CM/ECF system on June 3, 2025.

*/s/ Aaron M. Katz*
