UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES,<br><br>v.<br><br>WILLIAM RICK SINGER,<br><br>             Defendant. | 1:19-cr-10078-DJC<br><br>**HEARING REQUESTED** |

### DEFENDANT WILLIAM RICK SINGER'S MEMORANDUM OF LAW IN OPPOSITION TO THE GOVERNMENT'S GARNISHMENT REQUEST

The government is seeking to garnish defendant William Rick Singer's qualified retirement account pursuant to the restitution order that Judge Zobel imposed as part of Mr. Singer's criminal sentence. We acknowledge that, as a general matter, a qualified retirement account is not exempt from garnishment pursuant to a valid order of criminal restitution. But, for the reasons explained below, the amount that Mr. Singer still owes in restitution is not clear. Accordingly, whether the value of the retirement account at issue exceeds Mr. Singer's remaining restitution obligation is not clear either. Before the Court allows the government to garnish Mr. Singer's retirement account (or any other assets for that matter), the Court should inquire into what Mr. Singer still owes in restitution.

### BACKGROUND

On March 5, 2019, Mr. Singer pled guilty to a four-count criminal information. Count three of the information charged Mr. Singer with conspiracy to defraud the Internal Revenue Service ("IRS"), in violation of 18 U.S.C. § 371. The information specifically alleged that "[b]eginning in or about 2013, Singer agreed with [parents] to disguise bribe payments, at least in part, as charitable contributions to [Key Worldwide Foundation]," which Mr. Singer had

1

registered as a 501(c)(3) entity. ECF No. 1, at ¶ 73. The information further alleged that "[a]t Singer's direction, employees of [Key Worldwide Foundation] sent these [parents] acknowledgement letters falsely attesting that no goods or services were exchanged for the purported donations." *Id.* The information alleged that this enabled the parents "to improperly deduct the cost of the bribes from their federal income taxes, and thereby to defraud the United States by underpaying [their] federal income taxes." *Id.*, ¶ 74 (describing this as the "purpose and object of the tax fraud conspiracy").

Consistent with the criminal information's charging language and Mr. Singer's plea agreement, the government at Mr. Singer's Rule 11 hearing again described the tax fraud conspiracy as "the use of the [Key Worldwide Foundation] charity account [to] enable[ ] the parents who [were] paying bribes to deduct the cost of the bribes on their personal income taxes, thereby passing on the cost of the bribes to the United States taxpayer." ECF No. 24, at 22:2-6. In its sentencing memorandum, the government similarly asserted that the tax fraud conspiracy resulted in the parents "improperly deduct[ting] the payments [they made to Key Worldwide Foundation] from their federal income taxes." ECF No. 91, at 3.

Although the government also asserted in its sentencing memorandum that using Key Worldwide Foundation "allowed Singer to evade [his own income] taxes by failing to report the payments as income, resulting in his failure to pay taxes totaling approximately $10 million on his criminal proceeds," *id.*, that assertion was (1) not contained within the four corners of the tax fraud conspiracy charged in the information, (2) nowhere mentioned in Singer's plea agreement or his plea colloquy, and (3) not supported by any facts to which Singer had admitted or that the government otherwise proved at Mr. Singer's sentencing proceeding. Thus, as a matter of law, Judge Zobel's restitution order cannot be deemed predicated on a finding that Mr. Singer caused the IRS loss by cheating on *his own* income taxes.

2

At Mr. Singer's sentencing proceeding in January 2023, the government and Mr. Singer's defense counsel jointly represented to Judge Zobel that the tax fraud conspiracy caused a tax loss of $10,668,841.00. *See* ECF No. 102, at 23:15-19, 30:21-31:5. There was no meaningful discussion of the facts or theory underlying that restitution amount.

As part of Mr. Singer's sentence, Judge Zobel also issued a forfeiture money judgment in the amount of $3,429,970.87. *See* ECF No. 98. This was on top of an earlier forfeiture order pursuant to which Mr. Singer forfeited various bank accounts and additional valuable assets. *See* ECF No. 49. Undersigned counsel's understanding is that the cash and assets that Mr. Singer forfeited to the United States exceeds $5 million in value and that the U.S. Attorney's Office will be asking Main Justice to credit that amount toward Mr. Singer's restitution obligation.

## ARGUMENT

Conspiracy to defraud the IRS in violation of 18 U.S.C. § 371 is considered an offense against property—the victim of which is the IRS—for purposes of the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A(c)(1)(A)(ii). *See, e.g.*, *United States v. Turner*, 718 F.3d 226, 236 (3d Cir. 2013); *United States v. Gibson*, 1:15-cr-10323, 2020 U.S. Dist. LEXIS 38632, at *2 (D. Mass. Mar. 3, 2020) (citing *Turner*). Thus, Mr. Singer does not dispute that Judge Zobel was required to enter an order of restitution against Mr. Singer. Nor does Mr. Singer dispute, at least for purposes of this submission, that the restitution amount ordered by Judge Zobel—$10,668,841—was legally and factually correct at the time that Judge Zobel entered final judgment.[1]

But the correctness of Judge Zobel's restitution order at the time she issued it is not the end of the matter. Restitution under the MVRA "ought not to confer a windfall upon a victim."

---

[1] Although undersigned counsel has serious doubts about the legal and factual basis for the restitution order, undersigned counsel recognizes that Mr. Singer is likely procedurally barred from facially challenging the restitution order at this time.

3

*United States v. Naphaeng*, 906 F.3d 173, 179 (1st Cir. 2018).  Accordingly, the MVRA expressly provides that "[a]ny amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in . . . any Federal civil proceeding . . . ."  18 U.S.C. § 3664(j)(2).  The purpose of this statutory provision "is to prevent double recovery by a victim."  *United States v. Stanley*, 309 F.3d 611, 613 (9th Cir. 2002).  Thus, "[i]f the victim later recovers civil damages for the same loss, the court subtracts that sum from the victim's loss to determine the defendant's remaining restitution."  *United States v. Arguin*, No. 00-cr-10383-PBS, 2010 U.S. Dist. LEXIS 74835, at *11-12 (D. Mass. July 26, 2010) (collecting cases).

In *Arguin*, eight years after the defendant's sentencing hearing, the defendant sought "an order declaring that his $3.2 million [criminal] restitution obligation [had] been satisfied" because the government—the victim of his offense—had "been compensated fully for its loss" by virtue of a subsequent "$15 million [False Claims Act] settlement with the [defendant's] former employer in a related action."  *Id.* at *1.  Judge Saris agreed with the defendant's arguments.  She concluded that the defendant would have "no future restitution obligations" because the financial loss that the government sustained as a result of the defendant's criminal offense was fully compensated by his former employer's civil False Claims Act settlement payment.  *Id.* at *16.

In Mr. Singer's case, the only theory on which Judge Zobel's restitution order could permissibly have been based is that parents who used Mr. Singer's services improperly reduced *their income taxes* by declaring their payments to Key Worldwide Foundation as charitable contributions.  No other theory of tax loss is within the four corners of the criminal information to which Mr. Singer pled guilty, consistent with the facts to which Mr. Singer admitted in his plea agreement and at his Rule 11 hearing, or consistent with what the government otherwise proved

4

at Mr. Singer's sentencing proceeding. Thus, the question that now arises here is whether the IRS—the victim of the tax fraud conspiracy—recouped some or all of its tax loss by collecting money *from the parents* who, according to the government, had understated their income taxes.

The IRS has myriad tools in its arsenal—such as issuing deficiency assessments, conducting audits, and filing civil lawsuits—to collect taxes that were improperly avoided. Moreover, a taxpayer who failed to pay all taxes owed in the first instance can proactively submit an amended return and pay belatedly the money he should have paid originally. Did the IRS use those tools to recoup unpaid taxes from the parents who, according to the government, took improper charitable deductions for amounts they paid to Key Worldwide Foundation? Did some of those parents proactively amend their prior tax returns to remove the charitable deductions that they had taken improperly (whether knowingly or unwittingly)? If the answers to these questions are yes, then Mr. Singer's restitution obligation must be reduced accordingly. *See, e.g.*, *United States v. Mercer*, No. 20-2057, 2021 U.S. App. LEXIS 17795, at *5 (6th Cir. June 14, 2021) (holding that the restitution obligation of the defendant, a tax preparer who "filed false tax returns" for clients, should be reduced by all amounts that the IRS recovered from those clients). As the Sixth Circuit held in *Mercer*, "[a]lthough the language of the statute refers only to amounts recouped in civil proceedings, courts have held that a victim may not recover criminal restitution exceeding the amount of the loss. Thus, the amount of restitution owed to the IRS [by a defendant convicted of defrauding the IRS] must be reduced by amounts recovered from [other] taxpayers." *Id.* (internal citations omitted). Whether the IRS recovered such amounts through deficiency assessments, audits, or voluntary payments by the taxpayers is irrelevant. *Id.*

Mr. Singer is reasonably capable of compiling a list of the parents who made payments to Key Worldwide Foundation. We presume those parents (some of whom were criminally charged and some of whom remained unindicted co-conspirators) treated their payments as

5

charitable deductions on their original tax returns.[2]  The information necessary to determine how much of the IRS's tax loss the IRS already has recouped from those parents is uniquely in the possession of the United States.  We respectfully request that the Court require the government to ascertain that information prior to authorizing any garnishment of Mr. Singer's retirement account or any other assets.

        Respectfully submitted,

        */s/ Aaron M. Katz*
        Aaron M. Katz
        AARON KATZ LAW LLC
        399 Boylston Street, 6th Floor
        Boston, MA 02116
        (617) 915-6305
        akatz@aaronkatzlaw.com

        *Counsel for William Rick Singer*

DATED: September 16, 2025

---

[2] We may need some assistance from the government in putting together that list, as Mr. Singer is no longer in possession of all the materials he provided to the government during its Varsity Blues investigation.

## **CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing memorandum was served on the government counsel via the CM/ECF system on September 16, 2025.

*/s/ Aaron M. Katz*
