UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **LEAVE TO FILE GRANTED ON NOV. 19, 2025** |
| Plaintiff, | ) | |
| v. | ) | NO. 19-CR-10078-DJC |
| WILLIAM RICK SINGER, | ) | |
| Defendant | ) | |
| *and* | ) | |
| THE VANGUARD GROUP, INC., | ) | |
| Garnishee. | ) | |

**UNITED STATES' REPLY IN SUPPORT OF WRIT OF GARNISHMENT**

The United States of America, by its attorney, Leah B. Foley, United States Attorney for the District of Massachusetts, respectfully submits this reply in support of the Writ of Garnishment upon all funds which The Vanguard Group, Inc. ("Vanguard") is in possession or control of on behalf of the defendant, William Rick Singer ("Singer"), namely Singer's Individual Retirement Account ("IRA"). Although Singer has requested a hearing on the government's garnishment proceeding, he has identified no exemption under 28 U.S.C. § 3613(a)(1) that would bar a final order of garnishment of his IRA. Rather, in his Opposition, based on mere speculation, Singer seeks a credit to the restitution ordered by the Court as part of his criminal sentence. Simply put, now, nearly three years after sentencing, there is no basis in law or fact to revisit the agreed-to restitution of $10,668,841.00 that Singer was ordered to pay to the Internal Revenue Service ("IRS") as a result of Singer's failure to report over $27 million in income disguised as charitable donations to his purported charity, the Key Worldwide Foundation ("KWF").

## BACKGROUND

### A. Singer's Sentencing and Restitution Judgment

The background of this case is set forth in the Information, the Government's Sentencing Memorandum, Singer's Presentence Investigation Report ("PSR"), and elsewhere. In sum, Singer was the architect of a massive, decade-long scheme to use fraud and bribery to secure the admission of high school students to elite colleges and universities across the country. For years, he operated his college counseling and preparation business, "The Key," as well as an associated entity that purported to provide educational and self-enrichment programs for disadvantaged youth, KWF, as a criminal enterprise, securing the admission of his clients' children to college by paying off test proctors and administrators to cheat on college entrance exams and bribing college athletic coaches and administrators to designate applicants as athletic recruits based on fabricated credentials. As part of the scheme, Singer took in more than $27 million from his clients and paid bribes totaling more than $7 million. He transferred, spent, or otherwise used more than $15 million of his clients' money for his own benefit.

Singer pled guilty to four counts, including conspiracy to defraud the United States "for the purpose of impeding, impairing, obstructing and defeating the lawful government function of the IRS in the ascertainment, computation, assessment and collection of the revenue, to wit: federal income taxes." Doc. No. 1, ¶ 95 (Count Three); Doc. No. 19. In his plea agreement, Singer specifically waived any right "to file a direct appeal or challenge in a future proceeding (collateral or otherwise) any orders relating to … restitution." Doc. No. 2.

As set forth in Singer's PSR, in addition to Singer's clients improperly deducting the costs of bribes from their taxes, because of the tax fraud conspiracy and the establishment of KWF as a purported charity, Singer *also* defrauded the United States by failing to pay taxes on

2

the bribes from clients which were disguised as charitable donations. PSR ¶¶ 79, 80. Singer failed to report $27,190,908.40 in income, and, as a result owes the IRS $10,668,841 in outstanding taxes, and therefore, under 18 U.S.C. § 3663A, $10,668,841 in restitution was due to the IRS. PSR ¶¶ 80, 177. As noted by the Probation Office in the PSR, in determining the restitution amount, the Probation Office reviewed a detailed chart and schedules reflecting the computation of taxes due, which were made available to the Court for review. PSR ¶ 80 n.6. Singer was not ordered to pay restitution for any parents' unpaid taxes. *See* PSR ¶¶ 79, 80.

Singer did not object to any of the Probation Office's findings about restitution or to the government's request for entry of an order of restitution at sentencing. Nor did he appeal the imposition of restitution. To the contrary, in his sentencing memorandum, Singer stated that he "can pay restitution now and in the future" and argued he was eager to get back to work and that a lengthy period of incarceration would interfere with his ability to pay restitution. Doc. No. 90. At his December 4, 2023, sentencing, Singer's counsel also pointed to his agreement to pay restitution as a factor to be considered in the Court's sentencing determination: "He's also agreed to make restitution, as I indicated, to the IRS in excess of 10 million dollars. All totaled, he has committed to turn over 19 million dollars to federal agencies, money that he owes." Doc. No. 102 (Sentencing Transcript 23:16-19). Even more, when there was a clerical error in the Judgment as to the restitution amount, Singer's counsel filed a motion to correct the number from $10,668,410 to $10,668,841. Dkt. 104.

### B. Singer's Outstanding Restitution

Singer currently has an outstanding restitution balance of approximately $10,524,203.15. Singer has paid approximately $5,000 toward his restitution. The government previously obtained an order of garnishment of Singer's funds held by his former attorney's receivership

estate. *See* Doc. No. 140, 150. The government recovered $139,312.85 as a result of that order of garnishment.

In connection with the pending garnishment proceeding, Vanguard, the Garnishee, in an answer dated June 11, 2025, stated that it had a Rollover IRA Brokerage Account held by Singer, invested in a Money Market Fund, with a balance of $717,858.06. Doc. No. 173.

The government has forfeited a number of assets and also obtained a forfeiture money judgment in the amount of $3,428,970.87. Doc. No. 49, 98. Specifically, the government forfeited and disposed of $5,148,328.16 seized from two KWF accounts (Doc. No. 55), although the Court subsequently ordered the government to return $1 million to another defendant. *See* Doc. No. 138. The government disposed of other forfeited assets (KWF's investments in Hauser Private Equity, Jamtown, Virtual Phd, and Swansea Football Club), for a total of $255,814.96. The United States Marshals Service has not been able to dispose of two assets, despite diligent efforts: KWF's interest in Sharkey's Restaurant[1] and a company called Whamtech. Neither are publicly traded companies. In addition, prior to his sentencing, Singer made payments toward his anticipated forfeiture money judgment in the amount of $1.2 million. *See* Doc. No. 98. Singer's outstanding forfeiture money judgment amount is therefore $2,228,970.87.

The government has submitted a restoration request to the Justice Department's Money Laundering and Asset Recovery Section (which recently changed its name to the Money Laundering, Narcotics and Forfeiture Section) and that request is currently pending.[2] Even if

---

[1] The government understands from the Probation Office that in October 2024, Singer reported that he worked at Sharkey's as an advisor for the restaurant's capital and business efficiency. Several months ago, the government asked Singer's counsel for assistance in getting responses from Sharkey's but has not heard back.

[2] Sometimes MNF/MLARS will not rule on a restoration request until all forfeited assets are disposed of, which has not yet been completed here.

4

granted, Singer would still have an outstanding restitution balance of approximately $4,920,060.03, in addition to his outstanding forfeiture money judgment amount. As noted above, Singer's IRA account has a current balance of approximately $717,858.

## ARGUMENT

### A. Singer's IRA Account Is Not Exempt from Garnishment

Under the Mandatory Victim Restitution Act ("MVRA"), the imposition of a criminal fine or restitution "is a lien in favor of the United States on all property and rights to property of the person fined as if the liability of the person fined were a liability for a tax assessed under the Internal Revenue Code of 1986." *See* 18 U.S.C. § 3613(c); *see also United States v. Hyde*, 497 F.3d 103, 107 (1st Cir. 2007) (an order of restitution is, in effect, a tax lien against all of the Defendant's property). The Attorney General is responsible for enforcing restitution ordered by the Court. By statute, all provisions available for the enforcement of a fine are also available for the enforcement of restitution. *See* 18 U.S.C. §§ 3613(f) & 3664(m)(1)(A). The government may enforce restitution "against all property or rights to property of the [defendant]" except the specific property exempt from the levy of taxes, 18 U.S.C. § 3613(a)(1),[3] using the practices and procedures set forth in the Federal Debt Collection Procedures Act ("FDCPA"), including by writs of garnishment pursuant to 28 U.S.C. § 3205.

---

[3] These items include wearing apparel and school books; fuel, provisions, furniture, and personal effects; books and tools of trade, business, or profession; unemployment benefits; undelivered mail; annuity or pension payments under the Railroad Retirement Act; benefits under the Railroad Unemployment Insurance Act; special pension payments received by a person whose name has been entered on the Army, Navy, Air Force, and Coast Guard Medal of Honor roll; and annuities based on retired or retainer pay for the military under 10 U.S.C. § 1431, *et seq.*; workmen's compensation; judgments for support of minor children; certain service-connected disability payments; and assistance under the Job Training Partnership Act. 26 U.S.C. §§ 34(a)(1)-(8), (10), and (12).

Once the Court issues a writ of garnishment, the defendant may file an objection and request a hearing, as Singer did here. "The party objecting shall state the grounds for the objection and bear the burden of proving such grounds." 28 U.S.C. § 3205. Here, Singer does not claim that his IRA is exempt from garnishment—nor could he, because it does not fall under any of the statutory exemptions—or that the government did not comply with the procedures of the FDCPA, because it has.[4] Rather, Singer speculates that he may be entitled to a reduction of some or all of his $10 million restitution. But even if this were a valid objection to a garnishment action, which the government does not concede, as discussed below Singer is not entitled to any credit toward his restitution obligation.

### B. Singer Is Not Entitled to a Credit Toward the Amount of Restitution Owed

Singer's Opposition is essentially a motion for a restitution credit pursuant to 18 U.S.C. § 3664(j)(2). He speculates that the IRS may have received funds from parents who paid bribes to Singer and amended their tax returns so that *their* payments were no longer counted as charitable deductions on *their* returns. Even if some or all parents did amend their tax returns, that simply has no effect on Singer's restitution liability for *his* failure to pay taxes on income *he* received that was not for charitable purposes.

The MVRA provides very narrow grounds to reduce a defendant's outstanding restitution obligation. Section 3664(j)(2) provides that "[a]ny amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages *for the*

---

[4] A "garnishment action [is] not the appropriate vehicle" to collaterally attack a restitution order. *See United States v. Caramadre*, No. CV 16-445 WES, 2020 WL 4049946, at *2 (D.R.I. July 20, 2020) (collecting cases). "An objection to garnishment may only challenge 'exemptions to which [the defendant] might be entitled, and the government's compliance with the [FDCPA.].'" *United States v. Whitt*, No. 11-50395, 2011 WL 4062459, at *1 (E.D. Mich. Sept. 13, 2011) (quoting *United States v. Pugh*, 75 F. App'x 546, 547 (8th Cir.2003)).

6

*same loss* by the victim in—(A) any Federal civil proceeding …" (emphasis added).[5] This provision includes a key phrase—which is dispositive here—that amounts recovered must be compensatory damages for *the same loss*. As made clear in the PSR, Singer owes restitution because he operated a purported charity, received income disguised as charitable donations, and failed to pay taxes on that income. It does not matter if patrons of his business also failed to pay their taxes—those are entirely separate obligations.[6] In sum, any payments to the IRS by third parties for *their* tax obligations are not "compensatory damages for the same loss," *i.e.*, Singer's unpaid taxes.

The facts here, thus, have nothing in common with situations where courts have allowed a credit to restitution: where a defendant has compensated the victim for the *same loss* as damages recovered as the result of a civil settlement, because a victim is not entitled to multiple recoveries for the same loss. *See, e.g., United States v. May*, 500 F. App'x 458, 462 (6th Cir. 2012) ("[T]he MVRA does not permit victims to obtain multiple recoveries for the same loss.").[7]

---

[5] Section 3664(j)(2) only applies "to compensatory damages recovered by a victim in a civil proceeding *after* a court enters a restitution order." *United States v. Joseph*, 743 F.3d 1350, 1355 (11th Cir.2014) (internal citation and quotation omitted).

[6] To conclude otherwise would be the equivalent to saying that one is not required to pay taxes on earnings that originated from their customers' post-tax wages because their customers had already paid their taxes.

[7] Indeed, where a civil settlement between the defendant and the victim is *not* for the same loss for which restitution was ordered, no credit is warranted. *See, e.g., United States v. Sizemore*, 850 F.3d 821, 829 (6th Cir. 2017) (no abuse of discretion in declining to offset restitution for specific losses by insurance company's general settlement with victims); *United States v. Parsons*, 141 F.3d 386, 393 (1st Cir. 1998) ("In some cases, the nature of a settlement might show that the victim had been compensated for the loss. Here, however, we have no reason to conclude that the settlement compensated the bank for the $1.6 million loss [from the bank fraud]."); *May*, 500 F. App'x at 462 ("a private settlement between a criminal wrongdoer and his victim releasing the wrongdoer from further liability does not preclude a district court from imposing a restitution order for the same underlying wrong.").

The facts here are also readily distinguishable from the principal case that Singer cites in support of his argument, *United States v. Mercer*, No. 20-2057, 2021 WL 2946112 (6th Cir. June 14, 2021) (holding defendant did meet his burden to establish entitlement to restitution credit). Unlike Mercer, Singer is not a tax preparer, and his restitution is not based on the taxes owed by others. Singer's restitution is based on the taxes that *he* failed to pay because he ran a criminal enterprise through a purported charity.

But even if Singer's restitution was for the same loss as third parties' separate tax obligations, which it is not, Singer's mere conclusory statements about third parties' IRS payments do not provide an evidentiary basis to support a credit toward his restitution. *See Mercer*, 2021 WL 2946112, at *2 ("Mercer's conclusory statements are insufficient to support a reduction in his restitution obligation, and he must therefore provide evidentiary support to satisfy his burden of showing that portions of his restitution obligation have been paid off by other parties."). It is Singer's burden to establish that a credit is warranted by a preponderance of evidence. *See id.* ("the defendant bears the burden of proving any offset"); 18 U.S.C. § 3664(e) ("Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence."). He has failed to even make a preliminary showring that such credit is warranted, let alone meet his burden.

### C. Singer Is Barred from Disputing the Restitution Amount Ordered

In his Opposition, Singer takes issue with the restitution he was ordered to pay at sentencing, claiming that it is not supported by the allegations in the Information. *See* Opp. at p. 2 ("as a matter of law, Judge Zobel's restitution order cannot be deemed predicated on a finding that Mr. Singer caused the IRS loss by cheating on his own taxes"), 4. Not so.

In cases involving schemes or conspiracies, it does not matter if the particular criminal conduct that directly harmed the victim was alleged in the Information. *See United States v. Matos*, 611 F.3d 31, 43 (1st Cir. 2010) ("[T]he district court may order restitution to every victim directly harmed by the defendant's conduct 'in the course of the scheme, conspiracy, or pattern of criminal activity' that is an element of the offense of conviction, *without regard to whether the particular criminal conduct of the defendant which directly harmed the victim was alleged in a count to which the defendant pled guilty, or was even charged in the indictment*") (quoting *United States v. Hensley*, 91 F.3d 274, 277 (1st Cir. 1996) (emphasis added)). The purpose of restitution is to make "a victim whole by restoring the monetary equivalent of losses suffered in consequence of the defendant's criminal activity." *United States v. Salas–Fernandez*, 620 F.3d 45, 48 (1st Cir. 2010). Restitution is a mandatory part of sentencing and is not required to be alleged in the Information. *See* 18 U.S.C. §§ 3663A(a)(1) & (2) (requiring restitution to victims "directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern"); *United States v. Naphaeng*, 906 F.3d 173, 179 (1st Cir. 2018) (a victim's actual loss is the "pecuniary harm that would not have occurred but for the defendant's criminal activity") (quoting *United States v. Alphas*, 785 F.3d 775, 786 (1st Cir. 2015)). Thus, it was entirely appropriate for the Court to order Singer to pay restitution to the IRS for his unpaid taxes as part of his conviction for conspiracy to defraud the United States "for the purpose of impeding, impairing, obstructing and defeating the lawful government function of the IRS in the ascertainment, computation, assessment and collection of the revenue, to wit: federal income taxes." Doc. No. 1.

In any event, Singer cannot challenge—or collaterally attack—the restitution ordered. He did not object at sentencing, did not appeal his sentence, and waived any direct appeal or collateral attack on restitution in his plea agreement. *See, e.g., United States v. Banks*, 422 F. App'x 137, 140 (3d Cir. 2011) ("To the extent Banks attempted to challenge the overall validity of the District Court's restitution order, such a challenge should have been made on direct appeal."); *United States v. Spinks*, 63 F.4th 95, 101 (1st Cir. 2023) (appellate waiver in plea agreement barred defendant's appeal).

## CONCLUSION

For the foregoing reasons, the United States respectfully requests the Court overrule the Opposition of the Defendant to the Writ of Garnishment.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By:   */s/ Carol E. Head*
CAROL E. HEAD
Assistant United States Attorney
One Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3100
Carol.Head@usdoj.gov

Date: November 18, 2025