UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES,

v.

WILLIAM RICK SINGER,

        Defendant.

1:19-cr-10078-DJC

**DEFENDANT WILLIAM RICK SINGER'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO STAY GARNISHMENT ORDER**

    William Rick Singer respectfully submits this memorandum of law in support of his motion to stay the Court's order of December 24, 2025 order pending appeal. Whether a stay pending appeal is warranted is determined by a "familiar [four-factor] test." *New York v. Trump*, 133 F.4th 51, 65 (1st Cir. 2025). The factors are (1) the appellant's likelihood of success on appeal, (2) whether the appellant will be irreparably injured absent a stay, (3) whether the stay will substantially injure the other parties interested in the proceeding, and (4) whether the stay would serve the public interest. The First Circuit has explained that the "'first two factors . . . are the most critical.'" *Id.* at 66. This is particularly true here, where the victim of Mr. Singer's tax conspiracy offense was the government itself.

    Although the first factor in the test is often framed as whether the appellant is "likely" to prevail on appeal, federal courts have recognized that "the stay applicant need not demonstrate that it is more likely than not that it will prevail on appeal; rather '[t]he necessary level or degree of possibility of success will vary according to the court's assessment of other factors.'" *Millenium Pipeline Co., LLC v. Certain Permanent & Temp. Easements*, 812 F. Supp. 2d 273, 275 (W.D.N.Y. 2011). As the Second Circuit put it in *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002), "[t]he probability of success that must be demonstrated is inversely proportional to

1

the amount of irreparable injury [the appellant] will suffer absent the stay. Simply stated, more of one excuses less of the other."

Because the Court is familiar with the legal issues that will be the subject of Mr. Singer's appeal, Mr. Singer wishes to start with the second factor—the irreparable injury that he would suffer were a stay not granted. If the government were merely seeking to seize money from a bank account that Mr. Singer already had no plans to touch for some time, Mr. Singer probably would not be irreparably injured by the absence of a stay. But the government here is seeking to garnish not an ordinary bank account, but rather Mr. Singer's qualified retirement account. Qualified retirement accounts have special tax-protected status and strict contribution limits. They also have strict withdrawal consequences. Once money is withdrawn from a qualified retirement account, it loses its tax protected status forever, and income taxes must immediately be paid on every dollar withdrawn unless the account is a Roth 401(k) or Roth IRA.

If the government garnishes the assets that Mr. Singer holds in his qualified retirement account, this may ring a tax-related bell that even a First Circuit reversal could not completely un-ring. If the First Circuit rules in Mr. Singer's favor on appeal but the government already has garnished all the assets presently in Mr. Singer's qualified retirement account, could the First Circuit require the government to restore the funds directly to Mr. Singer's retirement account, such that the funds regain their tax protected account and are not treated as having been withdrawn? Or would the government simply cut Mr. Singer a check in the amount that it unlawfully garnished, with Mr. Singer then being treated as though he had withdrawn that entire amount from his retirement account (forever stripping the funds of their tax protected status and exposing Mr. Singer to an immediate income tax bill)? Because there are no clear answers to these questions, the Court should assume that, if the account is garnished pending appeal, Mr. Singer will suffer an injury that an appellate reversal could not completely repair. Conversely,

the government will not suffer any injury if a stay is granted. The money in Mr. Singer's account represents approximately .0000025% of what the IRS collects in taxes each year, and the account can remain completely frozen while Mr. Singer's appeal is pending. A stay will merely maintain the status quo ante.

With respect to Mr. Singer's likelihood of success on the merits, Mr. Singer respects the Court's December 24th decision but strongly disagrees with it. The circumstances of Judge Zobel's restitution order were highly unusual, and no appellate precedent clearly supports the major premise of the Court's decision, which is that it was lawful for Judge Zobel to enter an MVRA restitution order based on a factual finding at Mr. Singer's sentencing proceeding that Mr. Singer underpaid *his own* income taxes. The First Circuit's decision in *U.S. v. Matos*, 611 F.3d 31 (1st Cir. 2010), is not on point. As an initial matter, the standard of review in *Matos* was plain error, which distinguishes the case right off the bat. *Id.* at 43. Moreover, *Matos* stands merely for the proposition that, for purposes of the MVRA, "a victim is defined as 'any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.'" *Id.* The court in *Matos* recognized that this holding simply applied to the MVRA the analysis that the First Circuit in *U.S. v. Hensley* applied to the MVRA's predecessor statute, the VWPA. *See id.* (quoting *Hensley* at length). In *Hensley*, the First Circuit held that "'the outer limits of a VWPA . . . restitution order encompass all direct harm from the criminal conduct of the defendant which was within any scheme, conspiracy, or pattern of activity that was an element of any offense of conviction.'" *Id.* (quoting *Hensley*, 91 F.3d 274, 277 (1st Cir. 1996)).

Neither the government's submissions nor the Court's December 24th order explains how Mr. Singer's supposed cheating on his own income taxes—something that Mr. Singer *did not* plead guilty to and that *was not* charged in the criminal information against him—can be deemed conduct that is "within" the charged (and pled-to) conspiracy to help parents cheat on *their*

income taxes.  To be sure, all instances of federal tax evasion has the same ultimate victim—the IRS.  That, however, does not mean that every tax crime a defendant commits is "within" a unitary scheme or conspiracy for purposes of the MVRA.  Even *assuming* for the sake of argument that the government proved at Mr. Singer's sentencing proceeding that Mr. Singer cheated on his own personal income taxes, that conduct was not conspiratorial at all—it would have been an offense that Mr. Singer committed on his own, without the knowledge, participation, or agreement of the parents who were his co-conspirators.

Neither *Matos* nor *Hensley* stand for the proposition that if the defendant is convicted of Offense A, the district court may order additional restitution based on a judicial finding of fact that the defendant also committed a similar Offense B that resulted in additional harm to the victim of Offense A.  *Matos* and *Hensley* stand only for the narrow proposition that a district court is entitled to order restitution in an amount equal to all the harm caused by Offense A, including the harm caused to victims who were not expressly identified in the government's charging instrument.  This Court's decision thus expands *Matos* and *Hensley* in a novel way—and not to sustain Judge Zobel's restitution order, but rather to deny Mr. Singer the benefit of a credit for the amounts that the co-conspirator parents already have repaid to the IRS.

Even if the First Circuit were to agree with the Court's extension of *Matos* and *Hensley*, this would just beg the question of why Mr. Singer would not be entitled to a credit for the amounts that the co-conspirator parents already have repaid to the IRS.  If Mr. Singer's supposed evasion of his own income taxes is "within" the conspiracy to help parents cheat on *their* taxes, then logically the co-conspirator parents' payments to the IRS must be credited against the restitution amount.  In simple terms, the government cannot have its cake and eat it too, treating Mr. Singer's own tax evasion and the parents' tax evasion that he assisted as being "within" a single unitary conspiracy for purposes of calculating the original restitution amount but then

4

disregarding the co-conspirator parents' re-payments to the IRS when it comes to reducing what Mr. Singer still owes to the IRS in restitution.

These are all novel issues, and how the First Circuit will decide them is debatable enough that, in light of the irreparable injury that Mr. Singer will sustain absent a stay, a stay that maintains the status quo ante is appropriate.

Respectfully submitted,

*/s/ Aaron M. Katz*
Aaron M. Katz
AARON KATZ LAW LLC
399 Boylston Street, 6th Floor
Boston, MA 02116
(617) 915-6305
akatz@aaronkatzlaw.com

*Counsel for William Rick Singer*

DATED: December 31, 2025

**CERTIFICATE OF SERVICE**

    I hereby certify that the foregoing memorandum was served on the government counsel via the CM/ECF system on December 31, 2025.

    */s/ Aaron M. Katz*